U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 0 5 2021

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:16–cr–129–01–01 |
| –vs– | JUDGE DRELL |
| JAMES STACY HARBER (01) | MAGISTRATE JUDGE CAROL B. WHITEHURST |

### RULING AND ORDER

Before the court is a motion to vacate sentence filed *pro se* by defendant James Stacy Harber ("Harber" or "Defendant"). (Doc. 137). For the following reasons, the motion is DENIED.

### I. BACKGROUND

According to investigative reports, between 2010 and 2011, Harber lived in Ohio and engaged in a distanced sexual relationship via Skype and text messaging with codefendent Angela Head ("Head"). (PSR ¶ 14). The relationship expanded to include sexting with Head's minor children who at the time were ages thirteen (female), eleven (female, Victim No. 1 of PSR "V1"), ten (female, Victim No. 2 of PSR "V1"), and eight (male, Victim No. 3 of PSR "V3"). Further, Harber created screen captures via Skype of the three younger children in sexually explicit poses. (PSR ¶¶ 15–16). In 2013, Harber moved to Abbeville, Louisiana. (PSR ¶ 17). At an unknown time, V1 and V2 moved in with Harber and V3 would spend the weekends with Harber. During this time, Harber engaged in sexual acts with the victims and regularly took photographs of the acts with his cell phone. (PSR ¶¶ 13, 17).

1

On April 26, 2016, a search warrant to search Harber's residence was obtained by the Abbeville Police Department ("APD") after V1 verified that Harber was having sexual intercourse with V1 and photographing the acts. (PSR ¶ 11). The APD searched the home and seized digital media storage devices. Id. Within the same day, the APD obtained a search warrant for the digital media stored on the storage devices. Id. Forensics identified on Harber's computer and cell phone numerous child pornography images and videos obtained from the internet including depictions of adult men engaging in sexually explicit conduct with young, prepubescent, children. Doc. 66–2 pp 3–4. On Harber's cell phone, forensics discovered numerous sexually explicit images of V1 and V2 before and after forced vaginal and anal intercourse and of V3 before and after anal intercourse. (PSR ¶ 13; Doc. 107 p 28).

Harber was indicted on one count of conspiracy to produce child pornography (count 1), eight counts of production of child pornography (counts 2–9), and one count of possession of child pornography (count 10). (Doc. 1). Harber retained Michael Adams Fiser as counsel. Pursuant to a plea agreement, Harber plead guilty to three counts of production of child pornography (counts 7–9) and the one count of possession of child pornography (count 10). We sentenced him to total of seventy years incarceration on all counts of conviction. (Doc. 93). On appeal, Harber claimed a number of factors should have weighed in favor of a less than seventy year sentence or alternatively that the individual sentences should have been imposed concurrently. The Fifth Circuit disagreed and affirmed his sentence. United States v. Harber, 740 F. App'x 88 (5th Cir. 2018)

Harber now moves to vacate his sentence pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel. While his motion is divided into four grounds there are numerous vague, but claimed, allegations of deficient performance throughout. For the purpose of this analysis, we divide Harber's claims into those affecting the voluntariness of his plea and those affecting his sentence.

## II. LAW

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir.), cert. den., 504 U.S. 962 (1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. See Cates, 952 F.2d at 151; see also United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding. See United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992); United States v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995). Moreover, it is settled in this circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255

motions. See United States v. Kalish, 780 F.2d 506, 508 (5th Cir.), cert. den., 476 U.S. 1118 (1986); United States v. Fields, 761 F.3d 443, 466, 482 (5th Cir. 2014), cert. den., 135 S. Ct. 2803 (U.S. 2015); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994).

A collateral challenge may not do as a substitute for an appeal. United States v. Frady, 465 U.S. 152, 165 (1982). After conviction and exhaustion or waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted. See United States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991), cert. den., 502 U.S. 1076 (1992). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622, (1998) (internal citations omitted). A claim may not be reviewed under § 2255 absent a showing of cause and prejudice or actual innocence. United States v. Cooper, 548 F. App'x 114, 116 (5th Cir. 2013); United States v. Hicks, 945 F.2d 107, 108 (5th Cir. 1991).

In a motion to vacate sentence for ineffective assistance of counsel, the defendant has the burden of proof. See United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966 (1994)). To prevail on his motion, Defendant must satisfy the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984): (1) counsel's performance was deficient; and (2) the deficient

performance prejudiced the defense. Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies cause and prejudice. United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

Regarding the first prong of Strickland, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. See Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000), cert. den., 532 U.S. 915 (2001) (citing Strickland, 466 U.S. at 689). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 669. The court must consider the totality of the circumstances. Murray v. Maggio, 736 F.2d 279, 281 (5th Cir. 1984). "However, because it is all too easy to second-guess an unsuccessful counsel's defense with the benefit of hindsight, in making that inquiry 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Murray v. Maggio, 736 F.2d 279, 281 (5th Cir. 1984) (citing Strickland, 466 U.S. at 669). The court must be particularly wary of arguments that essentially come down to a matter of degrees, such as whether counsel investigated enough or presented enough mitigating evidence. Those questions are even less susceptible to judicial second-guessing. See Dowthitt, 230 F.3d at 743 (citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999)).

Regarding the second prong of Strickland, a defendant is prejudiced if there is a reasonable probability that, "but for counsel's unprofessional errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 689. To make that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the result and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. See United States v. Kayode, 777 F.3d 719, 725 (5th Cir. 2014) ("In assessing prejudice, we consider the totality of the circumstances...").

However, "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir.1983)). "One claiming ineffective assistance of counsel must identify specific acts or omissions; general statements and conclusionary charges will not suffice." Knighton v. Maggio, 740 F.2d 1344, 1349 (5th Cir. 1984) cert. denied, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984). "In the absence of a specific showing of how [the] alleged errors and omissions were constitutionally deficient, and how they prejudiced [the defendant's] right to a fair trial," a court will find a claim of ineffective assistance of counsel to be without merit. Barnard v. Collins, 958 F.2d 634, 642 (5th Cir.1992). Further, counsel is not ineffective for failing to raise a meritless claim. United States v. Gibson, 55 f.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

## III. ANALYSIS

Harber claims ineffective assistance affected both the plea phase and the sentencing phase. The two–part Strickland test applies to each phase. See Hill v. Lockhart, 474 U.S. 52, 58 (1985) ("[T]he two–part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."); Glover v. United States, 531 U.S. 198, 200 (2001) ("...if an increased prison term did flow from an error the petitioner has established Strickland prejudice."). The movant must show both deficient performance and prejudice to succeed on his claim. Strickland, 466 U.S. at 688.

An evidentiary hearing is not necessary to determine the veracity of Harber's claims of deficient performance, because he fails in all events to establish prejudice resulting from Mr. Fiser's alleged deficient performance. United States v. Stewart, 207 F.3d 750, 751 (5th Cir. 2000) ("A court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one.")

### A. PLEA PHASE

Harber alleges Mr. Fiser did not have a defense strategy, did not adequately review the plea materials, grossly underestimated Harber's sentencing exposure, and failed to object to the factual basis of the guilty plea.

To demonstrate prejudice after a defendant enters a guilty plea, the defendant must show "that there is a reasonably probability that but for counsel's errors, the defendant would not have plead guilty and would have insisted on going to trial." Hill

v. Lockhart, 474 U.S. 52, 59 (1985). The defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). The court must "focus on the defendant's decisionmaking." Lee v. United States, 137 S. Ct. 1958, 1961, (2017). However, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1967. "Factors relevant to determining whether a defendant would have gone to trial can also include 'the risks [he] would have faced at trial,' his 'representations about his desire to retract his plea,' and 'the district court's admonishments." United States v. Valdez, 973 F.3d 396, 403 (5th Cir. 2020) (quoting United States v. Batamula, 823 F.3d 237, 240 n.4 (5th Cir. 2016)).

We begin by noting that Harber does not assert in his § 2255 motion that he would have proceeded to trial but for Mr. Fiser's allegedly deficient performance. See Kayode, 777 F.3d at 726 n.4 ("This glaring omission in [defendant]'s affidavit alone would likely justify affirmance" of the district court's decision to deny defendant's § 2255 motion.). Nor has he moved, timely or otherwise, to withdraw his plea.

Further, Harber's statements and representations made in the plea agreement and under oath during the guilty plea colloquy refute the claims of ineffective assistance he now raises. In his colloquy with the Court, Harber, who has a college degree in English, clearly and unequivocally affirmed, under oath, that he had an adequate opportunity to go over his case and all matters involved, that there where

no remaining motions Mr. Fiser had not filed that Harber thought should have been filed, and that he was satisfied with Mr. Fiser's performance and representation. Harber also clearly and unequivocally affirmed his understanding of maximum penalties for each count, affirmed his understanding that sentencing recommendations by counsel are not binding, affirmed his understanding that he could be subject to a sentence more severe than that requested or recommended by either Mr. Fiser or the prosecution, and affirmed his understanding that sentencing was entirely up to the court. Further, Harber clearly and unequivocally affirmed, under oath, that neither Mr. Fiser nor the prosecution made a prediction, prophecy, or promise to Harber about what his actual sentence would be. See United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001) (holding that sworn statements at a plea hearing are entitled to a strong presumption of truthfulness).

Nonetheless, even if we consider that Harber's plea was undermined by any underestimation of sentencing exposure, Harber fails to establish prejudice. According to Harber's motion, Mr. Fiser was confident that the charges for production of child pornography would not be successful for the prosecution because the images thus far recovered were widely circulated on the internet suggesting Harber was not the producer.[1] What Harber and Mr. Fiser did not know was that certain inaccessible

---

[1] Since we ultimately find that Harber was not subjected to any additional sentence resulting from Mr. Fiser's performance, we are not required to determine whether, or when, Mr. Fiser's advised Harber that his sentencing exposure would be fifteen years. Nonetheless, we note that it would have been reasonable for Mr. Fiser to advise fifteen years for a single violation of 18 U.S.C.A. § 2252A(a)(5) involving a minor who is less than 12 years old with the expectation of some downward departures.

images on Harber's cell phone were made accessible after an update to cell phone forensic software. After the update, forensics discovered images depicting the minor victims before and after forced sexual penetration. (Doc. 107 p. 29–30). Harber and Mr. Fiser met with the prosecution to review the images. According to Harber, Mr. Fiser was visibly shaken by the new developments in the prosecution's case and advised Harber it would be best to plead guilty.

The new evidence presented a "drastic change in circumstances that significantly undercuts" any attempt to challenge the voluntariness of a guilty plea. Cf. Valdez, 973 F.3d at 404 (finding the district court's strong inclination to disallow Valdez's defense of justification as a "drastic change in circumstances that significantly undercuts" *post hoc* desires to proceed to trial) (citing Lee, 137 S. Ct. at 1966 ("Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.")).

The Fifth Circuit in Valdez reasoned that after such a drastic change in circumstance...

> The more obvious explanation for his late plea is ... rather than risk conviction by the jury (with no sentencing benefits whatsoever), Valdez and his counsel hoped to parlay a late guilty plea into a credit for acceptance of responsibility and his new-found desire to cooperate or render substantial assistance, perhaps a more promising opportunity.

973 F.3d at 404–05. We find that reasoning is persuasive here. The most obvious explanation of Mr. Fiser's late change of advice and Harber's late decision to enter a plea was to not risk conviction of ten counts by a jury with the hope of concurrent sentences and any possibly reduction in sentence with a guilty plea. "[A] defendant

facing such long odds will rarely be able to show prejudice from accepting a guilty plea...". Id. (citing Lee, 137 S. Ct. at 1966).

In addition to the above, Harber now seeks to correct certain facts in the Pre-Sentence Report, but the late and impermissible corrections do not materially affect the facts. For example, whether the case began because of a threat or a rumor, whether the minor victims were developmentally disabled, or whether Harber or Head manipulated the other to allow the minor victims to live with Harber have zero impact on the elements of the offenses and do not rebut the evidence against him.

Harber also challenges the exactness of the dates the government associates with the images forming the basis of the production counts, counts seven, eight, and nine. The indictment provides "on or about" but the stipulated facts of Harber's plea agreement do not. "If an indictment uses the term "on or about" to allege a date, the government is "not required to prove the exact date; it suffices if a date reasonably near is established." See United States v. Knowlton, 993 F.3d 354, 359 (5th Cir. 2021) (citations and internal quotations omitted). Further, the Fifth Circuit has "previously found that temporal variances of up to twelve months were not material." Id. (affirming conviction with a two and a half month variance) (compiling the following cases: United States v. Girod, 646 F.3d 304, 317 (5th Cir. 2011) (affirming a conviction with a four-month variance); United States v. Wilson, 116 F.3d 1066, 1089 (5th Cir. 1997) (affirming a conviction with a five-month variance), vacated on other grounds sub nom. by United States v. Brown, 161 F.3d 256 (5th Cir. 1998) (en banc); United States v. Bowman, 783 F.2d 1192, 1197 (5th Cir. 1986) (affirming a conviction with a

three-month variance); Russell v. United States, 429 F.2d 237, 238 (5th Cir. 1970) (affirming a conviction with a twelve-month variance)). The variance Harber complains of is at least within the order of months, if not within weeks or days. Accordingly, it is well within the Fifth Circuit's threshold for temporal variances.

Harber has failed to assert or otherwise document any desire to withdraw his guilty plea and proceed to trial. His *post hoc* claims of inadequate performance conflict with clear and unequivocal statement made under oath during the guilty plea colloquy. Also, a drastic change of circumstance leading up to trial vitiated Harber's claimed defense and virtually guaranteed a conviction. The factual challenges Harber presents are immaterial to the offenses charged. Accordingly, we do not find that Harber has provided a reasonable probability that but for Mr. Fiser's alleged inadequate review of the plea materials and gross underestimation of Harber's sentencing exposure, Harber would not have plead guilty and would have insisted on going to trial.

> Rather, the record indicates that [Harber]'s decision to plead guilty at the eleventh hour was logically motivated by the exposure of evidence which proved fatal to his affirmative defense, all but guaranteeing a conviction at trial, without any possible sentencing benefits he knew might be available with a plea of guilty.

Valdez, 973 F.3d at 404–05.

## B. SENTENCING PHASE

Harber now presents ten alleged character witness letters and alleges that Mr. Fiser could have used them to mitigate his sentence. Whether this amounts to deficient performance is highly suspect. See Bobby v. Van Hook, 558 U.S. 4, 11 (2009) (per curiam) (providing that it is acceptable under Strickland to forego witness

interviews that are cumulative and "distractive from more important duties"). Regardless, Harber was provided with every opportunity to present his character evidence during the sentencing hearing. Further, during allocution Harber failed to acknowledge the damaging effects of his actions immediately after victim statements were provided. Harber's character was demonstrated in part by this failure.

Harber further alleges V1 and V2 were over the age of twelve and thus Mr. Fiser should have objected to the four point enhancement calculated in the Pre-Sentencing Report. Mr. Fiser did in fact make the objection. In overruling it, we correctly concluded that while Harber lived in Ohio the minor children had yet to reach the age of twelve when Harber began sexting with and capturing sexually explicit screen shots of them via Skype. Similarly, Harber now alleges he did not know Angela Head while living in Ohio, which would now suggest that V1 and V2 may have been at least thirteen when he began his profane relationship with minor victims. Again, this new allegation contradicts his acceptance of the facts and guilty plea made under oath. Further, even if this present allegation is true, it would not have changed the calculation of his offense level because V3 was born January 12, 2002 and, thus, was only of the ages ten and eleven during the 2013 calendar year. (PSR ¶¶ 19–20, 23).

Harber also complains that Mr. Fiser did not object to the guideline specification of thirty years as opposed to fifteen for counts seven, eight, and nine. The guideline ranges with an offense level of forty-three is thirty years for counts seven, eight, and nine and ten years for count ten. Harber claims Mr. Fiser could

have objected, but does not specify the nature of the objection, and these numbers correctly derive from correctly calculated Sentencing Guidelines.

Similarly, Harber also complains the sentences should have been concurrent. However, "[s]entences for different offenses can be ordered to run consecutively, even if they are imposed upon a single trial." United States v. Dovalina, 711 F.2d 737, 739 (5th Cir. 1983) (citing Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981); United States v. Ammirato, 670 F.2d 552 (5th Cir.1982)). In fact, Harber should already know this because the Fifth Circuit's review of Harber's sentence foreclosed this argument. See Harber, 740 Fed.Appx at 88 ("Where, as here, the district court imposes a consecutive sentence within a properly calculated guidelines range, the sentence is entitled to a presumption of reasonableness.") (citing Candia, 454 F.3d at 471, 479.) Nonetheless, we also note that the prosecution was requesting one hundred years of incarceration, which was clearly within our discretion. After consideration of the § 3553(a) factors, we sentenced Harber to seventy years, which the Fifth Circuit affirmed. Harber, 740 Fed.Appx at 88.

Accordingly, we do not find that Mr. Fiser's performance resulted in any additional sentence. Glover, 531 U.S. at 200.

### IV. CONCLUSION

For the reasons enumerated above, it is hereby **ORDERED** that Defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. 137) is **DENIED.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 5th day of August 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT